May it please the court, my name is Paul Mogan and I'm representing the appellant Gary Sampson, If the court will indulge me, six words of Latin, there's a legal maxim that's been embraced by the Supreme Court and this court and that well captures our basic submission here in this appeal, the defense of submission, that is, casante ratione legis quesit ipsi lex, which the Supreme Court has translated as the rationale of a legal rule no longer being applicable, the rule itself no longer applies. And the rule of question here is the rule that is often stated that for there to be collateral estoppel or issue preclusion, the prior determination must be essential to the judgment. And the problem of our submission is that when you're dealing with fact-finding at trial in a criminal case and the fact-finding turns out to be in favor of the defendant, that the rationale for the essential to the judgment rule does not apply and therefore the rule either should not apply or should be applied only to a relaxed extent. Counsel, if we were to sort of de-link collateral estoppel from that principle that is essential to the judgment, how would you cabin in some way the rule that you're asking us to adopt? I don't find in your argument really any limiting principle and I think it's important for us to understand what that might be if you're urging us to stake out what would be very new ground. Well, I think it's not completely new because I think it's implicit in the Delafield-Bedard case, but to get directly to the question, I think that certain findings by a jury in a special verdict would be, which should not be subject to the rule. At least here where the jury was specifically told to consider each alleged aggravating factor first before getting to the balancing of aggravating factors and mitigating factors. So certainly one could conceive of pretrial determinations in a criminal case that perhaps wouldn't be subject to preclusion. Well, you're perhaps arguing that we should have a special body of law for capital cases. That premise seems to underlie some of your argument. At least I sense that that might be what you're arguing. Certainly, there would be no need to go any further in this case than to have a rule for capital cases, as it is a capital case. A similar argument could be made in a non-capital criminal case where you're dealing with jury fact finding, but you don't have in such a case, although obviously we try to avoid convicting the innocent, you don't have quite the concern for reliability that exists in capital cases. When you ask us to deviate from the essentials of the judgment rule, that's not a rule that simply exists in horn books and legal texts. That's a rule that is given to us by the Supreme Court. What authority do we have to deviate from it without them changing the rule? Well, we've tried to show in our brief, there's quite a considerable body of law recognizing that the requirements for clause estoppel do differ from circumstance to circumstance. I mean, one case we cited was U.S. v. Kramer from my judge friendly in 1960 or 61. I understand that, but the Supreme Court has made the rule pretty categorical and has used it as a defining element in its collateral estoppel jurisprudence. Well, Bobby v. Bees, I mean, it involves an appellate court. It's a capital case. There's no denying that. It's a criminal case, of course. But it's talking about appellate court opinions. So that's the classic situation where the rationale has been when an appellate court gives multiple rationales, one can't be sure that each one received full attention. And so it's ordinarily not appropriate to give preclusive effect, may not be. In addition, when a determination is not essential to the judgment, the party who loses can't appeal from it. And so in many circumstances, that's of great concern. For example, if a product is held defective in a partisan ability case, but it's further held that it didn't cause the public's injury, the manufacturer cannot appeal from the defect determination. So it's unfair to apply preclusion. I understand that, but none of that answers my question. When the Supreme Court lays down what appears on its face and in its case law to be a categorical rule, what authority do we have to say, yeah, they said that, but they couldn't really mean it because there's this case, and that's different? That's for the Supreme Court to say, or the Supreme Court to say, under ordinary circumstances, this is the rule, or with some exceptions, this is the rule. That's not what they've said. They've said collateral is not the essential element of the judgment. Well, I think what the Honor has to judge is whether the distinctions that I'm proposing are trivial or are they significant. No, that's not what I'm proposing at all. What I'm proposing, whether we have authority to deviate, no matter what we think of the merit of the distinctions that you raise, when the Supreme Court has given us a categorical rule, my idea of the way courts work is that we are bound by what the Supreme Court has had to say. And that's what I'm proposing. I'm proposing that we have the ultimate authority on the law, and that the jurisprudence is unequivocal that the essential element requirement is necessary to a finding of collateral estoppel. Well, we don't have any wiggle room on that. Counsel, why don't you accept that premise and then present any argument you might have that these somehow meet the essential to the judgment test? Well, in this particular case, the jury, as the Court knows, returned special findings on these factors. And as a result, Mr. Sampson was sentenced in 2003 to death. Of course, the judgment, as many judgments, a judgment, a civil case might see, a million dollars to Mr. Jones. This says Mr. Sampson is sentenced to death. But the judgment embodies a number of things. And in this case, it rested on various aggravating, implicitly rested on numerous aggravating factors, not including future dangerousness and obstruction because those had been rejected by the jury. Well, the jury forms said one or more jurors would find that the government had not met its burden of proof as to both of those. Nonetheless, the jury, looking at other factors, delivered the death penalty in this case. So how can these two rulings possibly be essential to that judgment? Well, I think it's similar to the Duggar case in the 11th Circuit, in which, in that case, felony murder was rejected by the judge. I said that wrong first. It's a circuit case, right? Yeah, so I have to submit only as persuasive. It's not showing that binding. It's after the Pollen case. It's before the Bees case. Okay. I would commend it to my wife. Excuse me, you rely very heavily on that to that case. This case seems very far removed from that case. As I understand that case, in order to convict a first-degree murder, there were two forms of liability. One was felony murder and one was premeditation. There was a finding by the judge that there was not sufficient evidence to provide for the felony murder theory of liability. Now, that strikes me as that close link between felony murder and one ground for conviction. That may lend itself to the argument that there was, in effect, an equivalent on one theory of liability. What you have here is far removed from that. Here we have multiple factors considered by the jury. Some statutory, some non-statutory, all of which are a prelude to a multi-factor consideration by the jury. The link between these findings by the jury and its own determination is far more remote than in the Ducker case. Would you agree? Well, it was a simpler case. It didn't involve a long list of factors. There's no denying that. But it's equal to, duh, it was a judgment loser. If that's the test, that when you're a judgment loser, because he was convicted of murder, sentenced to death. If you're a judgment loser, you can never get the benefit of collateral estoppel. He should not have won. There's another distinction, which is your client pled guilty. He pled guilty to the murders, and then the jury was asked what the appropriate penalty was. And so that divide between guilt and the appropriate penalty is a distinction in this case from the Eleventh Circuit case. I think, though, that the case is established that the double jeopardy clause still applies at capital sentencing. I said nothing to suggest to the contrary. Counsel, I thought, with respect to Judge Lynch's earlier question about how you might argue that the findings by the jury were essential to the judgment, I thought you were arguing that, at least at the time that the jury made its findings, it could have thought that its finding was essential to an ultimate judgment that it had to make. Or at least it had no reason to think otherwise. And in that sense, it gave an importance, a centrality to the jury's decision. That made it sort of de facto essential to the judgment. Isn't that what you're trying to argue? I think that's right. I mean, there could be all kinds of situations. I don't see that in your argument. I'm appreciative of the suggestion that perhaps that's what you meant, but frankly, I don't see that in your briefs. Well, we did try to stress these were special findings. We explained that there were instructions about sequential findings, so that we have to assume the jury followed the instructions. So it would have determined whether each aggravating factor existed before it moved to the balancing and before, indeed, it moved to mitigating factors. So it's quite different from a ruling by a judge on a pretrial motion to suppress, for example, or a motion to change venue. This, let's say, is a six-week trial after lengthy jury selection, and the jury was fully litigated also. It is true that there are a lot of factors in these cases, and some, I guess it's possible that even in a capital case, a certain factor might not get much attention. But certainly, future dangerousness, the history of capital litigation is future dangerousness is a subject of major attention at the trial of capital cases. So this was not overlooked. There was extensive evidence on both sides about this, and the jury made its determination. So we submit that in light of the high value that the Eighth Amendment places on reliability, that issue shouldn't be redetermined. I had understood this to be a Fifth Amendment double jeopardy case. Do you have any Eighth Amendment law that links the two? There is no case that I'm aware of that supports your Eighth Amendment claim. Well, the Marge v. California case, Rick, points out that the double jeopardy clause and the capital jurisprudence both place a value on reliability. So it's not something that the defense has concocted. But that still doesn't answer the question of whether there is an Eighth Amendment claim that has been pled here. Well, we certainly argued the Eighth Amendment to the district court. But is it in your brief? That's the question, I think. It's in both briefs. There's no issue there. It's in the brief in the argument in this court, and it was mentioned below, that it's not a separate claim, but it is something that should inform the analysis. Assuming that that argument is available to you, I'm not sure I understand the nature of your reliability argument. Why is it that if the government, in this renewed phase, is allowed to re-litigate future dangers in this obstruction of justice, why does that implicate the issue of reliability, just the fact that they would have another opportunity to establish what they were not able to establish before? What does that have to do with reliability? Well, any time when the defense – the prosecution has major advantages in the trial of criminal cases. And certainly to make the defense re-litigate an issue, not just once but twice, does increase the chance that an erroneous determination would be made. Why? Well, because part of the defense would be revealed, for example, in the first trial. The government knows more the second time around, and therefore their case is less reliable? Or is it that the jury verdict is less reliable because there is more information the second time around? You're arguing sort of against common sense. Well, I think that, again, any defense lawyer would recognize that having to prove his case a second time and call some of the same witnesses, have the inconsistencies between their testimony the second time and their testimony the first time exposed as is inevitable when people testify twice about the same matter, increases the chance that an erroneous determination would be made. No, it increases the chance that the result might be different, but the second result might be more reliable than the first, because the jury is better informed. It could be. It could be. But in criminal cases, and especially in capital cases, our law has tended to give the benefit of the doubt to the defense. And here we have, just a year ago, Justice Breyer and Justice Ginsburg saying that the capital punishment system is not reliable. Whether they're right or not, certainly we need to do everything to make it as reliable as can be done. I can see why you would want to preserve that argument for the record, should you ever get to the Supreme Court in this case. So we'll take it at that. May I reserve the balance of my time for rebuttal? I should have said so at the beginning. Certainly. Thank you. Judge Lynch, and may it please the Court, Mark Quinlivan on behalf of the United States. In our view, both the defendant's double jeopardy and collateral estoppel claims are dictated by a straightforward application of Supreme Court precedent. In Bobby v. Beese, which was a criminal capital case, the Supreme Court cited the restatement second of judgments as establishing that one of the touchstones for issue preclusion is that a determination be essential to the judgment. And the Court indeed said that the Sixth Circuit below, most grave amongst its errors, was that that Court had failed to recognize that issue preclusion is reserved for prevailing parties. In this case, the government was the prevailing party before the jury, because the jury unanimously recommended that the defendant be sentenced to death on both counts. And I note that because the jury did not find that these two non-statutory aggravating factors were proven, it did not consider them in balancing the aggravating and mitigating factors and determining that a sentence of death was warranted. So not only does the jury's findings with respect to those factors cut against the idea that it was essential to the judgment. Unlike Bobby, where the Ohio courts had to balance the aggravating and mitigating factors, and one of them was the mental state of the defendant, the jury did not even consider these non-statutory aggravating factors in reaching its resolution. I think that that makes abundantly clear that these determinations were not essential to the judgment. Counsel, in this case, the government had every incentive to fully litigate these non-statutory aggravating factors before the jury, and I assume did put its best foot forward on those issues. And in the end, the jury was simply not convinced. One of the underlying rationales for collateral estoppel is that we want to be sure who invoked the doctrine, that the issue involving the same parties was fully litigated in the prior proceeding, and the parties involved had incentive to fully litigate it, and it was properly considered by either the jury or the judge who had to decide the issue, that it is both unfair in the sense that it's a second bite at the apple, and it is somewhat inefficient to do it all over again. If that's the fundamental rationale for applying collateral estoppel, why doesn't that apply in this situation? Put aside some of the formal requirements that we talked about, just in terms of its underlying rationale, why doesn't that apply here? Well, I think I would have two answers, Judge Lopez. The first is that I think your presentation of the underlying rationale, of course, exerts the requirement that it be essential to the judgment. And what Bob is suggesting about this, by virtue of its essential to the judgment, serves the purpose of making sure that everybody takes the issue very seriously, is incentivized to give it their all in dealing with the issue. Surely you have that. Even though these findings were not essential to the judgment in a formal sense, there was every reason to fully litigate them. In fact, they were fully litigated. So if the purpose of that essential to the judgment rule is served by what happened here, why shouldn't collateral estoppel apply? Well, I guess I don't accept the premise that the essential to the judgment is predicated on all of those requirements and does not stand apart as one of the independent requirements for the doctrine to apply. I think it's another way of saying it, Judge Lopez, is that to say that essential to the judgment is not one of the touchstone requirements of issue preclusion is like saying that in strict scrutiny cases you don't always need a compelling governmental interest. Again, what Bob makes clear was that there were numerous underlying errors in the federal court's treatment of the claim in that case. To follow on Judge Lopez's thought, a lay person might view this as there are two different questions. One has to do with future dangerousness. At the first trial it had to be up to a certain date. Now, sadly, there is a retrial, and therefore the question of future dangerousness may well include a different time period. That's a little different than the other issue, which has to do with whether possibly any new evidence would have emerged, and most likely the answer is not, and so Judge Lopez is quite correct in saying you had every incentive to put on your best case at the time. On that issue, you don't intend to put on, quote, new evidence, do you? Well, not new evidence. In terms of future dangerousness, we intend to put on new evidence that postdated the original judgment. Yes, I understand that. Yes, but not new evidence in terms of anything that predated the original judgment. Okay, so a taxi cab driver might say, well, you had your shot at it. The jury rejected. Why should you get a second shot at it? And I understand the point, Judge Lynch, and I guess my answer would be that the average person on the street when, for example, during the Rodney King trial and the officers were acquitted on state charges but then charged and convicted federally, the average person on the street might think that, how is that not a violation of the Double Jeopardy Clause? It isn't because of the dual sovereign doctrine. But we don't have that here. No, we don't, but I guess what I'm saying, my response is that it may be that somebody on the street might feel that what is going on here runs afoul of these principles, but it's not as a legal matter that's incorrect for the reasons we've set forth in our brief. And I think that if that person were informed of the underlying rationale and were, for example, to know that a non-statutory aggravating factor is neither sufficient nor necessary to a judgment, it plays a different role than even statutory aggravating factors under the Federal Death Penalty Act, and were to find out that, in this case, the jury recommended death on both counts, notwithstanding its findings here, I think the average person on the street would not find anything untoward by that conclusion. But isn't the fundamental point that the proper application of legal principles is not a matter to be judged, but from the perspective of the average person on the street? Absolutely, Judge Selye. Absolutely. And just following up the point you made with my friend, of course, the Supreme Court has time and time again reiterated that courts should apply the decision most directly on a point and leave it to the Supreme Court itself to revisit its decisions. And respectfully, in our view, what the defendant is asking this court to do is go beyond anything that the Supreme Court has said and, in fact, to deviate from those controlling precedents. How important to your case is it that these are non-statutory factors? And then, second question, would the outcome be any different had they been statutory factors, but the jury nonetheless reached the death penalty? Judge Lynch, I don't think it's critical that these are non-statutory versus statutory aggravating factors in the sense that for purposes of the double jeopardy clause, the Supreme Court in Poland versus Arizona made clear that any aggravating factors does not trigger double jeopardy concerns when, as here, a defendant has been sentenced to death. The difference to the extent collateral estoppel might come into play is, once again, that the jury, as a gateway eligibility factor, has to find that at least one statutory aggravating factor was present. In contrast, the jury doesn't have to find that any non-statutory aggravating factors are present. And even if they find that a non-statutory aggravating factor has been proven, it's just considered with the other proven aggravating factors and balanced against the mitigating factors. Yes, but your argument that the non-statutory factors are not sufficient in and of themselves almost makes it sound as though you believe there's a per se rule that, therefore, they cannot ever be necessary and essential to the judgment in the case. I think in a judgment when, as here, a defendant is sentenced to death, yes, I think that that is a per se rule. I have to think about if one or more members of the jury recommended life imprisonment under the statute, that would be the sentence, and double jeopardy would prohibit the government from pursuing the case any further. But yes, I think whereas here the jury recommends death, at most a non-statutory aggravating factor, or a finding that a non-statutory aggravating factor does not exist, that cuts against the ultimate judgment. That's what the Supreme Court said in Bobby. And again, here it's even further removed from the situation there because the Ohio courts actually balanced the mitigating factor in question there, while here, because the jury found that these two factors had not been present, they didn't even consider them in its ultimate determination about whether a death sentence was warranted. Counsel, doesn't opposing counsel, it doesn't lie heavily on this Dunker case, I believe, and it does say, and I think correctly, that you try to distinguish that incorrectly to the extent that you argue that there were acquittals in that case. There were no acquittals in the sense that you knew that there was one issue before the jury, whether the individual could be convicted of first-degree murder, and there was a rejection of one theory of liability supporting that. I think they analogize that to the kind of aggravating factor we have here. There the Eleventh Circuit did apply collateral estoppel to the attempt to re-argue the felony murder. Why isn't that, it's not a Supreme Court case for sure, but why isn't that a circuit precedent that certainly does support their argument? I think there are several reasons, and I do apologize, as we noted in our letter, for failing to make clear that these were not acquitted counts, it was an acquitted theory. But I think there are two key points. First, that decision came down in 1989. When, in applying collateral estoppel in that case, the Eleventh Circuit, in setting out the test, did not state that essential to the judgment requirement. And Bobby v. Beese, which was decided 20 years later, makes clear that that's a touchstone for operation of the judgment. And two additional points. One, yes, these were not counts, they were theories, but the defendant was acquitted at the guilt phase of felony murder. That didn't happen here. The defendant pled guilty to both counts of the indictment. And so in distinguishing Poland v. Arizona, the Eleventh Circuit said, we don't have the concern that the Supreme Court addressed about trying to figure out many trials about aggravating factors. That would be the case here, where all of the findings occurred during the sentencing phase. And so I think all of that distinguishes Duggar. And once again, in setting out the test itself, not only did the court not discuss the essential to the judgment requirement, but it did not appear to be an argument that was advanced by the state in that case. Both parties to this case have adopted a sort of common structure of viewing this as two issues. One, double jeopardy, was there an acquittal? Two, regardless, was there collateral estoppel? But I've wondered about the logic of that structure. If, in fact, there is no acquittal, and what we're talking about are the non-statutory factors, is it even possible to make a collateral estoppel case? Judge Lynch, I thought of that very question, given that the collateral, of course, collateral estoppel is a component of the double jeopardy clause. And so it would seem odd to say that if there's no acquittal for purposes of the double jeopardy clause, that nonetheless, a collateral estoppel component of the double jeopardy clause would go forward. We didn't make that argument here, because both in Bobby versus Beast, the court considered those claims separately. And I believe this court in, I believe, the Story decision, did so as well. So I do think that there is, to some degree, a logic in saying that a sub-component of double jeopardy might apply where there has been no acquittal. Well, in any event, the government's not conceding by adopting this structure of argument. That's right. And I don't want to, heeding your admonition, I don't want to mention too much about jurisdiction, just the point that, in briefing this issue, because we are asking this court to assume a statutory jurisdiction and affirm on the merits, we were mindful of the fact that we wanted to present those arguments, which we viewed were dictated by controlling precedent, and therefore were easier to resolve than the jurisdictional questions. Thank you. Anything else? No. If the court has no further questions, we ask that the court affirm. All right. Mr. Quinlivan, since you're also ceding time, thank you. If you're caught by surprise by anything your opponent says, we'll give you another minute or two. Thank you. Counsel stated that, in the Dellop case, that the Eleventh Circuit did not state the essential to the judgment requirement. But actually, at page 314 of the opinion, in listing the requirements, and we quote this in our brief, the court said one requirement was the determination was a critical and necessary part of the final judgment. And then the court went on to say the acquittal of felony murder was essential to the prior proceeding. While Dellop was still found guilty. Counsel, aren't you urging on us a sort of a theory that we might have alternative findings? In this case, you could have a finding of first degree murder on one of two theories. If there was a finding that was essential to one of those alternatives, then collateral will stop would apply. That's sort of a variation of the essential to the judgment argument. Are you urging that we adopt sort of that variation of collateral stopping? No, I'm using the Dellop case to show that in the capital case, the criminal case, that the essential to the judgment requirement has to be relaxed when you're dealing with findings of fact. And we had a very experienced panel, which is not a panel hostile to the death penalty. All three members of the Dellop panel were in the majority in McCleskey v. Kemp, which rejected the substantial challenge to the death penalty as racially discriminatory. So these things. But all of them were operating without the benefit of the Supreme Court's jurisprudence over the last 25 years. Well, they didn't have the Bees case, and they didn't have the- They didn't have anything from the last 25 years. Right. They didn't have the Pullman case. Let me get to the Bees case. Because I just think whether we win or lose, I think anyone looking at it would have to say, the Bees case is so vastly different. What that case involved was determinations in the 1990s, years before the Supreme Court had said in Atkins, the retarded can't be executed. There had been some comments in these appellate court opinions that the defendant had mental retardation. Obviously, the courts were not applying the Atkins test or any test adopted pursuant to Atkins that hadn't even been decided yet. There were brief comments in both opinions. So I think it's for that and other reasons given in our brief, the Bees case is far afield from this case. And in fact, when you look at the restatement judgment test, on the first page of the restatement judgment says, this is directed to civil cases. So I don't think it's unreasonable for us to say that there might be some modification of the restatement when you get to a criminal case and particularly a capital case. That's our submission. I thank the court for its patience. Thank you. Thank you. No, thank you Mr. Quinlivan. The court will be in recess. All rise. The session of the honorable United States court repeals now has passed. We'll call 930 tomorrow morning. God save the United States of America and this honorable court. Thank you.